# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | NO. 16-24 |
| | : | |
| JOSE LUIS HERNANDEZ- RAMON | : | |

# MEMORANDUM

**KEARNEY, J.**                                                                                                                                                       **October 28, 2022**

      We sentenced Jose Luis Hernandez-Ramon in October 2016 to the mandatory minimum 180 months incarceration following his July 2016 plea to possessing a controlled substance with intent to distribute and possessing a firearm as a convicted felon. We entered the sentence considering a variety of information presented at the detailed sentencing hearing and finding 180 months sufficient but not greater than necessary given the Sentencing Commission's advisory guidelines range suggested a sentence of 188-235 months. Congress then required we consider a sentence up to thirty years custody with the mandatory minimum of 180 months in custody. We found a basis for a downward variance from the recommended 188 months in custody given his sincere hopes of rehabilitation and imposed a supervised release of five years to ensure his continued compliance with his obligations. Mr. Hernandez-Ramon now returns seeking compassionate release or reduction of sentence citing Congress's modification of mandatory minimums in the First Step Act, his rehabilitation, his fear of COVID given his risks, and his interest caring for his parents. We appointed experienced counsel from our Criminal Justice Act Panel who ably presented supplemental arguments. We find no basis for compassionate release and may not order home confinement. We deny the request for compassionate release or home confinement after review of medical records.

I.      Background

Jose Luis Hernandez-Ramon plead guilty to possessing a controlled substance with the intent to distribute and being a felon in possession of a firearm during a hearing before us on July 5, 2016.[1] We granted a variance from the 188 month minimum sentence recommended by the Sentencing Commission and instead sentenced Mr. Hernandez-Ramon to the mandatory minimum of 180 months of imprisonment and six years of supervised release on October 7, 2016, consistent with the then-existing mandatory minimum sentences.[2]

The Bureau of Prisons currently detains Mr. Hernandez Ramon at FCI Schuylkill.[3] Mr. Hernandez-Ramon has served approximately half of his sentence and is projected to be released on June 29, 2028.[4]

Mr. Hernandez-Ramon received the Pfizer COVID-19 vaccine on September 2, 2021.[5] He received a Pfizer booster shot on September 29, 2021.[6] Mr. Hernandez-Ramon tested positive for COVID-19 on January 20, 2022 and recovered.[7] Mr. Hernandez-Ramon has COVID-19 comorbidities of obesity, smoking, substance use disorder, and kidney disease.[8] The facility provides Mr. Hernandez-Ramon medical care for his kidney disease.[9]

Mr. Hernandez-Ramon has taken instructive courses while incarcerated to earn his GED.[10] He has taken anger management classes and works with the facility's maintenance program.[11]

Mr. Hernandez-Ramon plans to lives with his family in Philadelphia and work as a home health aide to care for his parents upon release.[12] Mr. Hernandez-Ramon's family will initially provide for him financially.[13] Mr. Hernandez-Ramon claims he will start a non-profit for at-risk youth aimed at preventing crime and gang violence.[14]

Mr. Hernandez-Ramon's mother requires "very significant assistance" due to a medical condition.[15] Mr. Hernandez-Ramon's father suffers from a late stage of Alzheimer's.[16] Mr.

Hernandez-Ramon's sister is paid as a home health aide and provides six hours of care five days a week to Mr. Hernandez-Ramon's mother and cares for four minor children.[17] Mr. Hernandez-Ramon's sister lives across the street from her parents.[18]

## II.   Analysis

Mr. Hernandez-Ramon moves for compassionate release. Mr. Hernandez-Ramon argues extraordinary and compelling reasons for compassionate release because: (1) Congress removed "stacked" sentences under section 924(c), (2) his rehabilitation warrants his early release, (3) his kidney stones and other comorbidities place him at an increased risk from contracting COVID-19, and (4) his parents require a caretaker.[19] None of these bases warrant release.

Congress allows us to "reduce the term of imprisonment" and "impose a term of probation or supervised release with or without conditions" if, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," we find "extraordinary and compelling reasons warrant such a reduction."[20] We may consider the Sentencing Guidelines to determine whether a petitioner presents "extraordinary and compelling reasons" to warrant a reduction in sentence.[21] We may also consider the Sentencing Commission's non-binding policy statement at U.S.S.G. § 1B1.13, which "sheds light on the meaning of extraordinary and compelling reasons."[22] The Bureau of Prisons generally considers the medical condition, age, and family circumstances of an incarcerated citizen to determine whether extraordinary and compelling reasons exists.[23] We may consider—but are not bound by—the factors the Bureau of Prisons employs when evaluating requests for compassionate release under the Sentencing Commission's section 1B1.13 Note 1(D).[24]

Mr. Hernandez-Ramon does not meet his burden to show extraordinary and compelling reasons for release. We commend Mr. Hernandez-Ramon on his efforts while incarcerated. But he does not show his rehabilitation to be exceptional nor is he the only person available to care for

3

his elderly parents or particularly susceptible to severe illness or death from contracting COVID-19. We deny Mr. Hernandez-Ramon's motion.

### A. Congress's amendments to section 924(c) do not apply retroactively to reduce Mr. Hernandez-Ramon's sentence.

Mr. Hernandez-Ramon claims he is serving an unconstitutional sentence.[25] He argues Congress's changes to section 924(c) in the First Step Act prohibiting "stacking" constitute extraordinary and compelling reasons for release.[26] He claims he should get the benefit of the First Step Act which prohibits "stacking" and would lower his mandatory minimum sentence.[27] We disagree consistent with our Court of Appeals' direction.

Our Court of Appeals provides Congress's changes to section 924(c) are not retroactive.[28] "In passing the First Step Act, Congress specifically decided [ ] the changes to the § 924(c) mandatory minimums would not apply to people who had already been sentenced."[29] "The nonretroactive changes to the [section] 924(c) mandatory minimums . . . cannot be a basis for compassionate release."[30] Interpreting Congress's non-retroactive changes to section 924(c) as "creating an extraordinary and compelling reason for early release . . . would sow conflict within the statute."[31] In *United States v. Gordon*, an incarcerated man moved for compassionate release and pointed to the length of his sentence along with the changes in the sentencing laws since his sentence.[32] Judge Bartle denied compassionate release and found "intervening changes in sentencing law[s] that were not made retroactive" cannot serve as the basis for finding "an extraordinary and compelling reason for compassionate release."[33] He specifically recognized "[w]hile the First Step Act of 2018 changed the sentencing landscape for § 924(c) offenses, it did not make those changes retroactive."[34]

Congress's changes to section 924(c) are not retroactive and do not constitute extraordinary and compelling reasons for Mr. Ramon-Hernandez's release.

4

**B.    Mr. Hernandez-Ramon's rehabilitation is not an extraordinary and compelling reason for early release.**

Mr. Hernandez-Ramon argues his extensive rehabilitation constitutes extraordinary and compelling reasons under the Sentencing Guidelines' "catch-all" provision.[35] Mr. Hernandez-Ramon cites to educational courses taken in pursuit of a GED, employment with the facility's maintenance program, and anger management training.[36]

Mr. Hernandez-Ramon's rehabilitation does not constitute an extraordinary and compelling reason for release. We commend Mr. Hernandez-Ramon's for his efforts towards rehabilitation. But we cannot reduce sentences simply for good behavior while incarcerated; we must also find extraordinary and compelling reasons for release.[37] An incarcerated person's rehabilitation does not deserve "substantial weight" in determining extraordinary and compelling reasons "unless there is something exceptional about that rehabilitation."[38] Mr. Ramon-Hernandez's "good behavior and coursework cannot serve as a basis for compassionate release as a matter of law."[39]

**C.    Mr. Hernandez-Ramon's fear of COVID-19 given his risks is not an extraordinary and compelling reason for release.**

Mr. Hernandez-Ramon argues he faces an increased risk of serious complication if he contracts COVID-19 because of his obesity, kidney disease, smoking history, and substance use disorder.[40] Mr. Hernandez-Ramon's fear, even with his claimed risk, is not an extraordinary and compelling reason for release.

It is now well-settled "the existence of COVID-19 cannot alone justify compassionate release."[41] The "existence of some health risk to every federal prisoner as the result of this global pandemic does not, without more, provide the sole basis for granting release to each and every prisoner within our Circuit."[42] It is also well-settled COVID-19 vaccinations "are highly effective

at preventing infection and . . . at reducing the severity of symptoms" from COVID-19 and its presently known variants.[43] COVID-19 may constitute an extraordinary and compelling reason for release only if a Mr. Ramon-Hernandez shows he is "particularly susceptible to serious illness or death" from contracting COVID-19, "usually as a result of one or more underlying comorbidities."[44] The proliferation of vaccines throughout the Bureau of Prisons allows us to find compassionate release motions based on COVID-19 "generally lack merit."[45] "[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."[46]

Mr. Hernandez-Ramon does not meet his burden to show he is at an increased risk of severe complications from COVID-19. Mr. Hernandez-Ramon previously contracted COVID-19 in January 2022. Mr. Hernandez-Ramon is vaccinated.[47] Mr. Hernandez-Ramon's medical records confirm the facility is actively prescribing proper medication for his kidney disease and being in the facility either limits or has no effect on Mr. Hernandez-Ramon's smoking and substance use.[48] Mr. Hernandez-Ramon offers no basis to find extraordinary and compelling reasons for early release other than the general health risk to every federal prisoner as a result of COVID-19 and its strain on the prison system.[49] Mr. Hernandez-Ramon is one of "the vast majority of prisoners the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."[50]

**D.   Mr. Hernandez-Ramon does not need to be a caretaker for his mother and father because his sister is available to fulfill the role.**

Mr. Hernandez-Ramon seeks release to care for his parents' ailing health and his parents requiring his care.[51] He requests we move him to home confinement.[52] We disagree he has demonstrated extraordinary and compelling reasons for a sentence reduction and lack authority to move him to home confinement.

6

Mr. Hernandez-Ramon argues we must reduce his sentence because his parents require full-time care, and he is needed to provide it. The Sentencing Commission advises extraordinary and compelling reasons to reduce a sentence exist in certain family circumstances, including: "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children[,] [or] (ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the *only* available caregiver for the spouse or registered partner."[53] While not binding, we consider this policy statement to interpret the meaning of "extraordinary and compelling" in these circumstances.[54] By its plain text, the policy statement only extends to caring for a defendant's minor child(ren) or an incapacitated spouse when the incarcerated person is the only one available to provide the care.[55] Some judges have found an incarcerated person may establish "extraordinary and compelling" reasons to reduce his sentence by showing he is the *only* caregiver available for an incapacitated close family member like a parent.[56] Mr. Hernandez-Ramon fails to establish he is the only one available to care for his parents even assuming is the sole caregiver available to care for an ailing parent.[57]

Mr. Hernandez-Ramon admits his mother currently receives care from his sister who serves as a home health aide.[58] He argues his mother does not receive enough care because his sister only provides services for six hours per day five days a week.[59] Although Mr. Hernandez-Ramon also argues his help is required to care for his father, who suffers from an advance stage of Alzheimer's he fails to show his sister is unavailable to provide care for his father.[60]

We next address Mr. Hernandez-Ramon's request for home confinement. We lack authority to move Mr. Hernandez-Ramon to home confinement because the Federal Bureau of Prisons has sole authority to make housing decisions for federal inmates.[61] Mr. Hernandez-Ramon has not shown extraordinary and compelling reasons allowing us to reduce his sentence. We deny

7

his request for home confinement because we lack authority and he has not shown grounds to reduce his sentence.

### III.    Conclusion

Jose Luis Hernandez-Ramon moves for compassionate release approximately midway through his mandatory minimum sentence. He does not present an extraordinary and compelling reason for compassionate release. We cannot order home confinement. We deny Mr. Hernandez-Ramon's motion for compassionate release or home confinement without prejudice.

---

[1] ECF Doc. No. 26; ECF Doc. No. 30 at 1.

[2] ECF Doc. No. 35.

[3] ECF Doc. No. 80 at 1.

[4] ECF Doc. No. 82 at 2.

[5] ECF Doc. No. 85 at 31.

[6] *Id.*

[7] ECF Doc. No. 82-1.

[8] ECF Doc. No. 80 at 52–53.

[9] *Id.* at 168–70.

[10] *Id.* at 38.

[11] *Id.* at 38–39.

[12] *Id.* at 34; ECF Doc. No. 82 at 8.

[13] ECF Doc. No. 80 at 40.

[14] *Id.* at 41.

[15] *Id.* at 31.

[16] *Id.* at 33.

[17] *Id.* at 32–33.

[18] *Id.* at 33.

[19] *Id.* at 3–5.

[20] 18 U.S.C. § 3582(c)(1)(A).

[21] *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021).

[22] *Id.*

[23] *See* U.S.S.G. § 1B1.13, Note 1(A–C).

[24] *Andrews*, 14 F.4th at 260.

[25] ECF Doc. No. 80 at 28–29.

[26] *Id.*

[27] *Id.*

[28] *United States v. Wilson*, 960 F.3d 136, 151 (3d Cir. 2020), *cert. denied sub nom. Moore v. United States*, 141 S. Ct. 1090 (2021), and *cert. denied*, 141 S. Ct. 1091 (2021).

[29] Andrews, 12 F.4th at 261).

[30] *Andrews*, 14 F.4th at 261.

[31] *Id.*

[32] *United States v. Gordon*, No. 99-348-2, 2022 WL 3597234, at *2 (E.D. Pa. Aug. 22, 2022).

[33] *Id*. (citing *Andrews*, 12 F.4th at 261).

[34] *Id.*; *see also United States v. Pennington*, No. 08-137-1, 2022 WL 1540408, at *1 (E.D. Pa. May 16, 2022) ("The First Step Act's amendments to mandatory minimums under § 924(c) are not retroactive"); *United States v. Bledsoe*, No. 07-CR-0165-01, 2022 WL 1261740, at *4 (E.D. Pa. Apr. 28, 2022), *aff'd*, No. 22-2022, 2022 WL 3536493 (3d Cir. Aug. 18, 2022) ("Congress's amendment to section 924(c) cannot be applied retroactively for Bledsoe, and the length of his sentence, no matter how long, is not an extraordinary and compelling reason for early release.").

[35] ECF Doc. No. 80 at 3, 38–39.

---

[36] *Id.* at 38-39.

[37] *United States v. Logan*, 532 F. Supp. 3d 725, 735 (D. Minn. 2021).

[38] *Id.*

[39] United States v. Davis, No. 15-138-01, 2022 WL 4002304, at *3 (E.D. Pa. Sept. 1, 2022).

[40] ECF Doc. No. 80 at 52; ECF Doc. No. 82 at 4–5.

[41] *United States v. Roeder*, 807 F. App'x 157, 161 n.16 (3d Cir. 2020).

[42] *Id.*

[43] Press Release, Center for Disease Control and Prevention, CDC Real-World Study Confirms Protective Benefits of mRNA COVID-19 Vaccines (last reviewed Mar. 29, 2021), https://www.cdc.gov/media/releases/2021/p0329-COVID-19-Vaccines.html.

[44] *United States v. Johnson*, No. 18-578-1, 2022 WL 901468, at *4 (D.N.J. Mar. 28, 2022); *see also United States v. Gatson*, No. 13-705, 2022 WL 1269785, at *2 (D.N.J. Apr. 28, 2022) (vaccines effective against "Delta and other variants"); *United States v. Hannigan*, No. 19-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) ("Even in the era of the highly transmissible omicron variant, Moderna vaccination and booster shot is highly effective against severe illness.") (and compiling cases).

[45] *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

[46] *United States v. Reed*, No. 18-78, 2021 WL 2681498, at *4 (E.D. Pa. June 30, 2021).

[47] ECF Doc. No. 80 at 52, 163.

[48] *Id.* at 168–70.

[49] *Id.* at 42–53.

[50] *United States v. Broadfield*, 5 F.4th 801, 803 (7th Cir. 2021).

[51] ECF Doc. No. 80 at 31.

[52] *Id.* at 31.

[53] Sent'g Guidelines Manual § 1B1.13 cmt. n.1 (emphasis added).

[54] *United States v. Briggs*, No. 96-336-1, 2022 WL 159601, at *2 (E.D. Pa. Jan. 18, 2022) ("It is now clear that the existing Sentencing Commission Policy Statement for § 3582(c)(1)(A) contained in the Commentary to U.S.S.G. § 1B1.13, is not binding on the courts where

compassionate release motions are made by the defendants themselves. Nevertheless, this Policy Statement 'still sheds light on the meaning of extraordinary and compelling reasons,' given that 'Congress legislates against the backdrop of existing law.'" Hence, while the courts are free to interpret the meaning of extraordinary and compelling' for themselves, the existing Policy Statement may properly be considered for guidance in this inquiry.") (internal quotations omitted).

[55] *Id.* ("Although Briggs avers that his mother suffers from 'serious health conditions' which purportedly place her in imminent threat of demise without a primary caregiver such that she needs 'her son's assistance for day to day living,' a parent is neither a child nor a spouse."); *United States v. Ellsworth-Daway*, No. 17-506, 2021 WL 2823081, at *2 (E.D. Pa. July 7, 2021) ("There is no provision in the guidelines for an inmate who claims that he should be released as the only available caregiver for an ailing parent. Courts have generally denied release in circumstances comparable to those presented here."); *United States v. Ingram*, No. 14-40, 2019 WL 3162305, at *2 (S.D. Ohio July 16, 2019) ("Many, if not all inmates, have aging and sick parents. Such circumstance is not extraordinary.").

[56] *See, e.g.*, *United States v. Jones*, No. 13-252, 2021 WL 1060218, at *10 (W.D. Pa. Mar. 18, 2021) (being sole caregiver for incapacitated parent may constitute extraordinary and compelling reason to reduce sentence but finding defendant failed to show incapacitation or lack of any other available caregiver).

[57] *United States v. Coles*, No. 21-1715, 2022 WL 1552123, at *2 (3d Cir. May 17, 2022) (holding Judge McHugh did not abuse his discretion in denying compassionate release motion when finding defendant did not show extraordinary and compelling reasons in part because defendant failed to show his mother required immediate care or lack of any other available caregiver); *United States v. Wilkerson*, No. 19-15-5, 2022 WL 2869267, at *2 (E.D. Pa. July 20, 2022) (no extraordinary and compelling circumstances because the need to care for elderly or ill parents is not extraordinary and defendant failed to show he is the only person available to assist parent); *United States v. Rhodes*, No. 15-23, 2021 WL 4460031, at *6 (W.D. Pa. Sept. 29, 2021) (no extraordinary and compelling reasons when defendant's sister available to care for mother even though she did not live close to mother); *Ellsworth-Daway*, 2021 WL 2823081, at *3 (no extraordinary and compelling reasons because defendant failed to present any evidence he is only one able to care for mother); *Jones*, 2021 WL 1060218, at *10 (no extraordinary and compelling reasons because defendant fails to show his mother is incapacitated or defendant only one available to care for mother).

[58] ECF Doc. No. 80 at 32–33.

[59] *Id.* at 33.

[60] *Id.*

[61] *See United States v. Aguibi*, 858 F. App'x 485, 486 n.2 (3d Cir. 2021) (citing *Tapia v. United States*, 564 U.S. 319, 331 (2011)) (the Bureau of Prisons has the sole authority to place a prisoner on home confinement); *Washington v. Warden Canaan USP*, 858 F. App'x 35, 36 (3d Cir. 2021) ("[W]hether to transfer an inmate to home confinement is a decision within the exclusive

11

---

discretion" of the Bureau of Prisons.); *United States v. Milchin*, No. 17-284, 2022 WL 196279, at *1 n.1 (E.D. Pa. Jan. 21, 2022) (same); *Reynolds v. Finley*, No. 21-1251, 2022 WL 36225, at *4–5 (M.D. Pa. Jan. 4, 2022) (Congress in the CARES Act "does not provide federal courts with jurisdiction to direct or grant such relief. Thus, the decision regarding a federal inmate's place of confinement remains exclusively within the authority of the BOP, and the BOP's confinement location decision is 'not reviewable by any court.'").